No. 21-14161

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

FEDERAL TRADE COMMISSION,
*Plaintiff-Appellee*,

v.

NATIONAL UROLOGICAL GROUP,
INC., *et al*.,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of Georgia, Atlanta Division
No. 1:04-cv-03294
Hon. Charles A. Pannell, Jr.

# BRIEF OF THE FEDERAL TRADE COMMISSION

ANISHA S. DASGUPTA
  *General Counsel*

JOEL MARCUS
  *Deputy General Counsel*

Of Counsel:
AMANDA BASTA
CRYSTAL D. OSTRUM
EVAN M. MENDELSON

FEDERAL TRADE COMMISSION
Washington, D.C. 20580

MARIEL GOETZ
  *Attorney*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2763
mgoetz@ftc.gov

*FTC v. National Urological Group, Inc., et al.*, No. 21-14161

## FEDERAL TRADE COMMISSION'S
## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 to 26.1-3, appellee the Federal Trade Commission (FTC) certifies that in addition to the persons listed in the Certificate of Interested Persons in appellants' brief, the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations may have an interest in the outcome of this appeal.

Dasgupta, Anisha S., General Counsel, Federal Trade Commission

Hanmi Bank, Garnishee

Pinnacle Bank, Garnishee

Promiseone Bank, Garnishee

The PNC Financial Services Group, Inc., Garnishee

The FTC further states that, to the best of its knowledge, no other publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

The Federal Trade Commission believes that the facts and legal arguments are adequately presented in the briefs and record, and that appellants' arguments plainly lack merit. The Commission therefore believes that the decisional process will not be significantly aided by oral argument, and that prompt resolution of this matter on the briefs best ensures efficient and appropriate use of judicial and government resources. *See* 11th Cir. R. 34-3 (a), (b)(3); Fed. R. App. P. 34 (a)(1), (2)(C).

# TABLE OF CONTENTS

Statement Regarding Oral Argument ..........................................................i

Table Of Contents ........................................................................ ii

Table Of Citations ......................................................................iv

Preliminary Statement ....................................................................1

Jurisdiction ............................................................................2

Questions Presented .....................................................................3

Statement Of The Case ..................................................................3

    A.   The 2008 Injunction Addressing Hi-Tech's Violations Of The Federal Trade Commission (FTC) Act .................................3

    B.   Hi-Tech's Willful Disregard Of The District Court's 2008 Injunction.....................................................................4

    C.   The District Court's 2017 Contempt Order And Sanctions ......................6

    D.   The District Court's Denial Of Hi-Tech's Motion For Rule 60(b) Relief And An Accounting .................................................8

Summary Of Argument.................................................................11

Standard Of Review ....................................................................14

Argument...............................................................................15

I.    The District Court Properly Denied Rule 60(b) Relief. ...................................15

    A.   The district court correctly denied relief under Rule 60(b)(5)..............................................................................15

        1.   Rule 60(b)(5) applies only to "prospective" judgments, not to a monetary judgment such as Hi-Tech is attacking here.....................................................................15

2.    The district court properly exercised its discretion in finding that equity did not favor relief..............................................18

B.    The district court acted within its discretion in finding that Hi-Tech failed to show the "extraordinary circumstances" required by Rule 60(b)(6). .........................................................................28

II.    The District Court Properly Declined To Order An Accounting. ....................31

Conclusion .........................................................................................................35

# TABLE OF CITATIONS

## CASES

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) ............................................................34

*\*Ackermann v. United States,*
    340 U.S. 193 (1950) ............................................... 15, 28, 29

*\*Agostini v. Felton,*
    521 U.S. 203 (1997) ................................................... 16, 29

*Am. Airlines v. Allied Pilots Ass'n,*
    228 F.3d 574 (5th Cir. 2000) ...................................... 23, 24

*\*AMG Capital Mgmt., LLC v. FTC,*
    141 S. Ct. 1341 (2021) .......................................... passim

*Armstrong v. Exceptional Child Ctr., Inc.,*
    575 U.S. 320 (2015) ............................................................23

*Arthur v. Thomas,*
    739 F.3d 611 (11th Cir. 2014) ...........................................29

*Ass'n for Children for Enf't of Support, Inc. v. Conger,*
    899 F.2d 1164 (11th Cir. 1990) .........................................35

*Axon Enter., Inc. v. FTC,*
    986 F.3d 1173 (9th Cir. 2021) ...........................................23

*Bonner v. City of Prichard,*
    661 F.2d 1206 (11th Cir.1981) ..........................................16

*Bradley v. School Bd. of City of Richmond,*
    416 U.S. 696 (1974) ............................................................21

*Buck v. Davis,*
    137 S. Ct. 759 (2017) .........................................................28

*\*Cook v. Birmingham News,*
    618 F.2d 1149 (5th Cir. 1980) ...........................................16

*\*EEOC v. Guardian Pools, Inc.,*
    828 F.2d 1507 (11th Cir. 1987) ............................. 22, 23, 24

*Federated Dep't Stores, Inc. v. Moitie,*
    452 U.S. 394 (1981) ................................................... 15, 27

*FTC v. Acquinity Interactive, LLC*,
  No. 14-60166-Civ, 2021 U.S. Dist. LEXIS 152555
  (S.D. Fla. Aug. 13, 2021) ...................................................................24

*FTC v. Leshin*,
  618 F.3d 1221 (11th Cir. 2010) (*Leshin I*) ........................................26

*FTC v. Leshin*,
  719 F.3d 1227 (11th Cir. 2013) (*Leshin II*) ................................ 22, 24

*FTC v. Nat'l Urological Grp., Inc.*,
  356 Fed. Appx. 358 (11th Cir. 2009) ....................................................4

*FTC v. Nat'l Urological Grp., Inc.*,
  645 F. Supp. 2d 1167 (N.D. Ga. 2008) .................................................3

*\*FTC v. Nat'l Urological Grp., Inc.*,
  786 Fed. Appx. 947 (11th Cir. 2019) ........................................... passim

*FTC v. Nat'l Urological Grp., Inc.*,
  No. 1:04-CV-3294, 2014 WL 12797855
  (N.D. Ga. Aug. 19, 2014) ...................................................................10

*FTC v. Noland*,
  No. CV-20-00047, 2020 U.S. Dist. LEXIS 226584 (D. Ariz.
  Dec. 3, 2020) ......................................................................................24

*FTC v. On Point Capital Partners LLC*,
  17 F.4th 1066 (11th Cir. 2021) ...........................................................27

*\*Gibbs v. Maxwell House*,
  738 F.2d 1153 (11th Cir. 1984) .................................................... 16, 17

*\*Gonzalez v. Crosby*,
  545 U.S. 524 (2005) ..................................................................... 14, 29

*\*Griffin v. Sec'y, Fla. Dep't of Corr.*,
  787 F.3d 1086 (11th Cir. 2015) ...................................................... 9, 16

*Griffin v. Swim-Tech Corp.*,
  722 F.2d 677 (11th Cir. 1984) ................................................. 14, 29, 30

*Harper v. Va. Dep't of Taxation*,
  509 U.S. 86 (1993) ..............................................................................20

*Horne v. Flores*,
  557 U.S. 443 (2009) ............................................................................26

*In re E.I. DuPont de Nemours & Co.-Benlate Litig.*,
   99 F.3d 363 (11th Cir. 1996) .................................................................26

*In re Sanctuary Belize Litig.*,
   No. 18-3309, 2021 U.S. Dist. LEXIS 159793
   (D. Md. Aug. 24, 2021).........................................................................24

*\*Keystone Driller Co. v. Gen. Excavator Co.*,
   290 U.S. 240 (1933).............................................................................19

*\*Klapprott v. United States*,
   335 U.S. 601 (1949).............................................................................29

*Kokesh v. SEC*,
   137 S. Ct. 1635 (2017) .................................................................. 25, 26

*Lambrix v. Sec'y, Fla. Dep't of Corr.*,
   851 F.3d 1158 (11th Cir. 2017) .................................................... 14, 29

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).............................................................................33

*Managed Care Advisory Grp., LLC v. CIGNA  Healthcare, Inc.*,
   939 F.3d 1145 (11th Cir. 2019) .................................................... 32, 33

*\*McComb v. Jacksonville Paper Co.*,
   336 U.S. 187 (1949)........................................................... 22, 24, 25

*\*McDonald v. Oliver*,
   642 F.2d 169 (5th Cir. Apr. 10, 1981) .................................... 16, 17, 29

*McGinnis v. Ingram Equip. Co.*,
   918 F.2d 1491 (11th Cir. 1990) .........................................................25

*McGregor v. Chierico*,
   206 F.3d 1378 (11th Cir. 2000) .........................................................24

*\*Motorola Credit Corp. v. Uzan*,
   561 F.3d 123 (2d Cir. 2009)..................................................... 19, 20, 28

*Nat'l City Golf Fin. v. Scott*,
   899 F.3d 412 (5th Cir. 2018)...............................................................17

*Norgaard v. DePuy Orthopaedics*,
   121 F.3d 1074 (7th Cir. 1997) ............................................................17

*NOW v. Operation Rescue*,
   47 F.3d 667 (4th Cir. 1995).................................................................20

vi

*Parks v. U. S. Life & Credit Corp.*,
677 F.2d 838 (11th Cir. 1982) .................................................................21

*\*Reynoldsville Casket Co. v. Hyde*,
514 U.S. 749 (1995) ................................................................. 21, 27, 30

*SEC v. Liu*,
140 S. Ct. 1936 (2020) ................................................................ 23, 35

*Shillitani v. United States*,
384 U.S. 364 (1966) ..............................................................................22

*Spallone v. United States*,
493 U.S. 265 (1990) ................................................................................2

*Stokors S.A. v. Morrison*,
147 F.3d 759 (8th Cir. 1998)................................................................17

*Taggart v. Lorenzen*,
139 S. Ct. 1795 (2019) .........................................................................25

*Teague v. Lane*,
489 U.S. 288 (1989) .............................................................................21

*Toole v. Baxter Healthcare Corp.*,
235 F.3d 1307 (11th Cir. 2000)...........................................................28

*Twelve John Does v. District of Columbia*,
841 F.2d 1133 (D.C. Cir. 1988) .........................................................18

*United States v. Howell*,
425 F.3d 971 (11th Cir. 2005) .............................................................19

*United States v. Smith*,
122 F.3d 1355 (11th Cir. 1997) ..........................................................30

*United States v. United Mine Workers*,
330 U.S. 258 (1947)..............................................................................26

## STATUTES

15 U.S.C. § 52 ...........................................................................................3

15 U.S.C. § 53(b) ....................................................... 3, 8, 9, 12, 21, 24, 27

28 U.S.C. § 1291 ......................................................................................2

28 U.S.C. § 1331 ......................................................................................2

28 U.S.C. § 1337(a) .................................................................................2

28 U.S.C. § 1345 ..................................................................................2

28 U.S.C. § 2462 ................................................................................25

**OTHER AUTHORITIES**

*Data on Refunds to Consumers*,
    https://www.ftc.gov/enforcement/recent-ftc-cases-resulting-
    refunds/data-refunds-consumers (accessed May 4, 2022)...................34

*FTC Sends Refunds for Deceptively Marketed Dietary Supplements*,
    https://www.ftc.gov/enforcement/refunds/national-urological-
    refunds (March 2022)..........................................................................33

**RULES**

Fed. R. Civ. P. 60(b) ....................................................... passim

*Fed. R. Civ. P. 60(b)(5).................................................. passim

*Fed. R. Civ. P. 60(b)(6).................................................. passim

\* *Authorities principally relied upon are marked with an asterisk*

## PRELIMINARY STATEMENT

In the proceedings giving rise to this appeal, appellants (collectively, "Hi-Tech") flouted a 2008 injunction of the U.S. District Court for the Northern District of Georgia that banned Hi-Tech from advertising dietary supplements without scientific studies proving the claimed benefits. In 2017, the district court held Hi-Tech in contempt and ordered it to repay $40 million to deceived consumers. Long after the contempt judgment was sustained by this Court and became final, Hi-Tech had not voluntarily paid even a penny of the contempt sanction.

Hi-Tech now asks to be relieved from the contempt judgment under Federal Rule of Civil Procedure 60(b). Hi-Tech's principal claim is that the judgment is inequitable in light of a 2021 Supreme Court decision holding that a statutory provision authorizing the Federal Trade Commission to seek a permanent injunction in federal court does not also authorize monetary remedies, *see AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021). The district court properly denied Hi-Tech's motion to set aside the contempt judgment and this Court should affirm.

Nothing in *AMG* remotely affects the contempt judgment at issue here, which is a type of judgment *AMG* did not address and does not apply to. *AMG* dealt only with the Commission's power to obtain monetary relief in court under a

specific statute. It has no bearing on a district court's separate, inherent contempt power to remedy the violation of its own injunction through compensatory sanctions.

Moreover, Hi-Tech's long history of disregarding court orders is sufficient reason to deny Hi-Tech discretionary, equitable relief from the contempt judgment. Hi-Tech's refusal to pay the $40 million contempt sanction comes on top of its long-running refusal to pay a previous $15.9 million judgment entered by the district court, Hi-Tech's persistent disregard of the district court's injunctions, its false reporting to the Commission, and its deliberate hiding and dissipation of assets. Such conduct constitutes precisely the type of unclean hands that precludes equitable relief. The district court acted well within its ample discretion in declining to excuse a persistently contumacious litigant from a contempt sanction.

## JURISDICTION

The district court had jurisdiction to issue the underlying injunctions at issue pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345. It had jurisdiction to enter the 2017 contempt judgment pursuant to its inherent power to enforce compliance with its decrees. *See Spallone v. United States*, 493 U.S. 265, 276 (1990). This Court has jurisdiction under 28 U.S.C. § 1291.

## QUESTIONS PRESENTED

1.  Did the district court act within the scope of its discretion in denying Hi-Tech's motion for relief from the 2017 contempt judgment?

2.  Did the district court act within the scope of its discretion in denying Hi-Tech's requested accounting?

## STATEMENT OF THE CASE

### A.  The 2008 Injunction Addressing Hi-Tech's Violations Of The Federal Trade Commission (FTC) Act

Hi-Tech sells dietary supplements, which it advertised as clinically proven to cause weight loss and other health effects. In fact, Hi-Tech had no proof for its claims. In 2004, the Federal Trade Commission sued the company and several associated individuals for false advertising in violation of the FTC Act, which prohibits deceptive business practices and false advertisements.[1] *See* 15 U.S.C. §§ 45(a)(2), 52(a), (b). The district court found that Hi-Tech had violated the Act, ordered it to repay consumers $15.9 million in unlawful gains, and permanently enjoined Hi-Tech from making unsubstantiated claims with respect to any weight-loss product ("the 2008 injunction"). *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1215 (N.D. Ga. 2008). This Court summarily affirmed the

---

[1] We refer to appellants Hi-Tech Pharmaceuticals, Inc., Jared Wheat, and Stephen Smith collectively as "Hi-Tech," "appellants," or "contemnors." The initial FTC suit included other defendants not relevant here.

3

judgment. *FTC v. Nat'l Urological Grp., Inc.*, 356 Fed. Appx. 358 (11th Cir. 2009), *cert. denied*, 562 U.S. 1003 (2010).

## B. Hi-Tech's Willful Disregard Of The District Court's 2008 Injunction

Hi-Tech utterly failed to comply with any aspect of the district court's 2008 injunction. It neither paid the monetary judgment nor ceased its false advertising.

With respect to the monetary judgment, Hi-Tech had the resources to pay, but contumaciously refused to. Instead, the company went on a spending spree, acquiring other dietary supplement companies, buying luxury goods, and otherwise dissipating millions of dollars. *See* Dkt. 648 at 8-9 (describing series of multi-million-dollar payments and purchase of Lamborghini).[2] It also took extraordinary measures to conceal assets, setting up accounts in other companies' names and even hiding $260,000 in cash under the floor of Hi-Tech CEO appellant Jared Wheat's house. *See* Dkt. 253-1 at 4-5. At the same time, Hi-Tech "repeatedly provided inaccurate and incomplete information in compliance reports submitted to the FTC." October 10, 2017 Order ("2017 Contempt Order"), Dkt. 966 at 131.

It ultimately took the Commission nearly seven years – including dozens of garnishments and other judicial proceedings – to collect the full $15.9 million judgment. In all that time, Hi-Tech made only one voluntary payment, in the

---

[2] "Dkt." refers to the ECF docket number in the proceedings below.

amount of $150,000: less than 1% of the judgment. Dkt. 700-224 at 7 (FTC Ex. 278); Dkt. 619 at 95:18-12 (Jan. 22, 2014 Trial Tr.).

Hi-Tech also ignored the district court's prohibition on unsubstantiated advertising. In 2009, it launched a new, national marketing campaign for four products Hi-Tech claimed would "CAUSE RAPID FAT AND WEIGHT LOSS," "ANNIHILATE THE FAT," and "melt away" body fat. Those claims were not backed up by the scientific studies required under the 2008 injunction.

Hi-Tech's violation of the 2008 injunction was deliberate. Its own lawyers advised it that its advertisements would violate the injunction, noting that "the express language in the FTC Injunction," and the very "premise upon which" the injunction was based, required proof of product efficacy that the company lacked.[3] *FTC v. Nat'l Urological Grp., Inc.*, 786 Fed. Appx. 947, 951-52 (11th Cir. 2019), *cert. denied*, 141 S. Ct. 659 (2020); 2017 Contempt Order at 36-40. Wheat himself had earlier expressed his understanding that under the injunction, "there is nothing we can say without doing a double-blind placebo study," which Hi-Tech did not conduct. 786 Fed. Appx. at 955-56.

---

[3] These communications were ruled not privileged on multiple grounds, including because they were transmitted using a monitored prison email system and because defendants waived any privilege. *Nat'l Urological*, 786 Fed. Appx. at 952 n.1; *see also* 2017 Contempt Order at 34-35; Dkt. 935 at 4-5 (noting crime fraud exception also likely applied).

### C.  The District Court's 2017 Contempt Order And Sanctions

Hi-Tech reaped more than $40 million in sales from its brazenly unlawful advertising campaign. 2017 Contempt Order at 128-29. At the Commission's request, the district court held the company and several associated individuals in contempt, directing $40 million in compensatory sanctions to reimburse defrauded consumers. *Id.* at 127-32. The court observed that the 2008 injunction clearly required specific evidence to support Hi-Tech's weight-loss claims, that the contemnors understood those requirements, and that they nevertheless knowingly made claims that were lacking in support. *Id.* at 23-118. The court emphasized that "the record is replete with evidence . . . showing an intentional defiance of the court's injunctions" and that the contemnors "very clearly exhibited a pattern of contemptuous conduct since these proceedings began." *Id.* at 127-31. In view of their disregard of the court's prior orders, the court ordered the contemnors to pay compensatory sanctions of $40 million – the undisputed amount of gross receipts for the products advertised in violation of the injunction. *Id.* at 128-29.

This Court affirmed the contempt judgment. *FTC v. Nat'l Urological Grp., Inc.*, 786 Fed. Appx. at 954-57. Hi-Tech did not challenge the $40 million contempt sanction, but argued only that the advertising restrictions in the

6

injunction were insufficiently clear.[4] *See* 2018 Brief of Appellants at 4 (stating issues on appeal). The Court held that Hi-Tech had waived that challenge by "stay[ing] silent" when it could have objected at the time the injunction was entered, or subsequently sought clarification from the district court. 786 Fed. Appx. at 954-55. As the Court explained, far from being unable to understand the injunction, the contemnors were "calculating actors" who had "knowingly" and "deliberately engaged in self-serving activities they knew seriously risked violating the injunction," despite their own lawyers' repeated advice "that they risked contempt" by using the proposed advertising. *Id.* at 955-956. The Court also agreed with the district court that the meager evidence Hi-Tech claimed backed up its weight-loss claims did not nearly meet the injunction's substantiation standard. *Id.* at 957-960.

Once again, Hi-Tech refused to pay the monetary judgment, although it had ample resources to pay, and in fact had just spent six years acquiring a slew of new companies for more than $22 million. *See* Dkt. 953 at 78:15-24 (Apr. 6, 2017 Trial Tr.); *see also, e.g.*, Dkt. 553 at 14 (noting purchase of other supplement manufacturers) (citing Dkt. 487-8 ¶¶ 9-10, 12). Thus far, the Commission has

---

[4] Hi-Tech's only argument regarding the monetary sanction was that a separate violation of the injunction, which Hi-Tech admitted, did not "independently support" the $40 million sanction. *See* 2018 Brief of Appellants at 61-66.

collected $2.3 million through garnishment (Dkt. 1102 at 4-5). But to this day, Hi-Tech has not voluntarily paid a single cent toward the judgment.

### D.   The District Court's Denial Of Hi-Tech's Motion For Rule 60(b) Relief And An Accounting

In April 2021, the Supreme Court ruled that in authorizing the FTC to seek a "permanent injunction" in federal court, Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), does not also authorize the Commission to seek monetary remedies. *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1347-49 (2021). *AMG* concerned only the contours of Section 13(b). *Id.* at 1349. Indeed, the Supreme Court acknowledged that other authority might permit a court to enter a monetary judgment in an FTC matter. *See id.* at 1346, 1348-49.

In May 2021, Hi-Tech filed a motion in the district court seeking relief from the $40 million contempt judgment pursuant to Federal Rule of Civil Procedure 60(b). Hi-Tech argued that the judgment was inequitable in light of *AMG*, and it asked for a stop to all related collection efforts. Mot. 1-5, 13-19 (Dkt. 1101-1). It invoked both Rule 60(b)(5), which allows for relief when applying a judgment "prospectively is no longer equitable," and Rule 60(b)(6), which permits relief in extraordinary circumstances.

Hi-Tech further asked for an accounting of all funds collected under both the $40 million contempt judgment *and* the original $15.9 million judgment, which at that point had been final for over a decade. Mot. 19-22. Claiming that the FTC was

paying redress to consumers at a "glacial pace," Hi-Tech speculated that there were "bound to be" some funds that did not go to consumers and asked that the "inevitable excess" be returned to Hi-Tech. Mot. 20-22. Hi-Tech claimed that the court's inherent equitable powers authorized this relief. *Id.*

The district court denied all aspects of Hi-Tech's motion. D. Ct. Order ("Op.") at 8-17. It explained that Rule 60(b)(5) applies only to judgments that have a prospective effect, not to those "'that offer a present remedy for a past wrong.'" Op. 8 (quoting *Griffin v. Sec'y, Fla. Dept. of Corr.*, 787 F.3d 1086, 1091 (11th Cir. 2015)). Here, the contempt judgment ordered Hi-Tech to pay a sum of money to remedy a past wrong: i.e., Hi-Tech's violations of the court's 2008 injunction. The contempt judgment thus was not prospective and was beyond the reach of Rule 60(b)(5). Op. 8. In any event, Hi-Tech could hardly show any inequity when it was Hi-Tech's own refusal to pay the monetary judgments entered against it, not any failure on the Commission's part, that had delayed redress to consumers. Op. 9. The court noted that Hi-Tech "continue[s] to refuse to voluntarily pay," necessitating extensive garnishment efforts by the Commission to obtain even modest amounts. *Id.* These facts plainly did not meet Rule 60(b)(5)'s "exacting" standard for relief. *Id.*

The district court further explained that relief also was not appropriate under Rule 60(b)(6). As the court observed, *AMG* concerned whether Section 13(b) of

the FTC Act authorized the Commission to obtain monetary relief directly in court for violations of the Act. But Section 13(b) was not the basis for the 2017 contempt judgment attacked by Hi-Tech's motion. The compensatory contempt remedy in the 2017 judgment rested on the district court's inherent authority to enforce its own prior orders. Op. 11. Accordingly, as the court noted, *AMG* "does not constitute an exceptional circumstance for relief under Rule 60(b)(6)." Op. 13.

The district court also rejected Hi-Tech's claims that delays in the Commission's consumer redress program constituted exceptional circumstances warranting Rule 60(b)(6) relief, observing that Hi-Tech's own "lack of cooperation" was to blame for any delay in consumer refunds. *Id.* As in earlier rulings, the court emphasized "'that the FTC has administered the consumer redress program in a prompt and responsible manner considering the circumstances.'"[5] *Id.* (quoting *FTC v. Nat'l Urological Grp., Inc.*, No. 1:04-CV-3294, 2014 WL 12797855, at *1 (N.D. Ga. Aug. 19, 2014)).

Finally, the district court denied Hi-Tech's request for an accounting of funds collected by the FTC. The court explained that Hi-Tech "provided the court with no legal authority for ordering an accounting" and that such an accounting was unnecessary in any event. Op. 14-16. Hi-Tech knew how much money had

---

[5] In 2014, Hi-Tech sought similar relief under Rules 60(b)(5) and (6), asking the court to "reexamine the equity and continuing fairness of" the initial judgment. *See* Dkt. 642-1 at 6-10. The court denied relief, Dkt. 720 at 3; Hi-Tech did not appeal.

been collected toward the $40 million contempt judgment (and that those funds were being held in the Registry of the Court), and conceded that the vast majority of that judgment remained unsatisfied. Op. 16. Further, as the court observed, the 2008 judgment expressly barred Hi-Tech's request. Op. 14. Under that judgment, Hi-Tech could not challenge "the Commission's choice of remedies" with regard to consumer redress funds "or the manner of distribution chosen by the Commission." Dkt. 230 at 18-19 (Section IX (D)). The court rejected the suggestion that funds collected under the original $15.9 million judgment should be applied to the later $40 million contempt judgment, noting that the consumers harmed under the two judgments "are not the same" and that the initial judgment "clearly states" that any unused funds should be deposited in the U.S. Treasury. Op. 15.

Hi-Tech then brought this appeal.

## SUMMARY OF ARGUMENT

1. The district court properly exercised its ample discretion when it denied Hi-Tech's motion under Federal Rule of Civil Procedure 60(b) for relief from a $40 million contempt judgment. Hi-Tech cannot meet its heavy burden to show otherwise. Hi-Tech's argument boils down to the claim that a recent Supreme Court case makes it unfair to continue to collect on the contempt judgment, but that decision dealt with an entirely different type of monetary relief. The case has no

effect on compensatory contempt sanctions imposed for violating a district court's own order – even if a new judicial decision could apply to closed, final judgments.

a. The first provision of Rule 60(b) invoked by Hi-Tech, Rule 60(b)(5), allows relief from a final judgment only when "applying [the judgment] prospectively is no longer equitable." At the outset, Hi-Tech's reliance on this provision fails because a money judgment is not "prospective" in nature and so does not come within the plain scope of Rule 60(b)(5). And even if the Rule could apply, it permits relief only on grounds of equity, which requires a party to come to court with clean hands. Hi-Tech is not such a party. Had Hi-Tech paid the money judgments entered against it rather than dissipating assets and hiding resources, this matter would no longer even be live. The district court plainly acted within the court's equitable discretion in denying relief to a litigant with a consistent record of contempt and recalcitrance.

In any event, continuing to apply the contempt judgment against Hi-Tech is not inequitable because there has been no relevant change in law or circumstances since the judgment became final. Contrary to Hi-Tech's arguments, the Supreme Court's 2021 decision in *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021), did not change any law pertinent to the 2017 contempt judgment. *AMG* addressed only whether Section 13(b) of the FTC Act authorizes the FTC to recover monetary remedies for violations of the Act; it has no bearing on the

inherent powers of a district court in a contempt proceeding. *AMG* thus leaves undisturbed courts' broad powers to order compensatory contempt sanctions, and imposing compensatory remedies on those who flout court orders plainly is not "inequitable."

b. The district court also properly denied Hi-Tech's request to set aside the contempt judgment pursuant to Rule 60(b)(6), which requires the movant to show "extraordinary circumstances" justifying relief. Even if *AMG* were relevant to the contempt judgment (and it is not), a change in decisional law alone does not constitute extraordinary circumstances. Otherwise, long-settled judgments would be upended with every new Supreme Court decision, breeding chaos and upsetting principles of finality. Hi-Tech's claims of agency overreach also ring hollow. The contempt judgment stems from the district court's powers, not the Commission's. An established contemnor may properly be ordered to return money it took from innocent consumers in violation of court orders.

2. The district court acted well within its discretion in denying Hi-Tech's request for an accounting of collected funds. The court's 2008 injunction against Hi-Tech expressly bars Hi-Tech from challenging the distribution of the $15.9 million that the injunction ordered Hi-Tech to pay, and expressly directs that any money that cannot be sent to consumers will be turned over to the U.S. Treasury. Hi-Tech lacks any concrete interest in the money and has no standing to challenge

its disposition. In any event, nearly all of that money has been sent out to consumers already.

As for the $40 million contempt judgment, Hi-Tech has not voluntarily paid a cent of it, and what little money has been collected through garnishments is being held in the Registry of the Court for ultimate distribution to consumers. Even if Hi-Tech had any legal interest in the money, Hi-Tech has shown no good reason for an accounting and no abuse of the district court's discretion. Hi-Tech's complaints about the Commission's consumer redress program are incorrect and irrelevant.

## STANDARD OF REVIEW

Hi-Tech's burden on appeal is substantial. "Rule 60(b) proceedings are subject to only limited and deferential appellate review." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). This Court thus reviews a district court's denial of a Rule 60(b) motion only for abuse of discretion. *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 851 F.3d 1158, 1171 (11th Cir. 2017). "It is not enough that a grant of the motion[] might have been permissible or warranted; rather, the decision to deny the motion[] must have been sufficiently unwarranted as to amount to an abuse of discretion." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). This Court also reviews the denial of a request for an equitable remedy like an accounting only for an abuse of discretion. *See Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1310 (11th Cir. 2014).

14

## ARGUMENT

### I.   THE DISTRICT COURT PROPERLY DENIED RULE 60(B) RELIEF.

Federal Rule of Civil Procedure 60(b) provides a limited exception to the general rule that claims that are tried, decided on the merits, appealed, and closed are "considered forever settled as between the parties," *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981). Specifically, Rule 60(b) endows district courts with discretion to grant relief from final judgments in narrow and defined circumstances. As relevant here, Rule 60(b)(5) authorizes discretionary relief from a final judgment when "applying [the judgment] prospectively is no longer equitable," and Rule 60(b)(6) authorizes discretionary relief based on a showing of "extraordinary circumstances," *Ackermann v. United States*, 340 U.S. 193, 199-203 (1950).

Here, the district court acted well within its discretion when it determined that neither Rule 60(b)(5) nor Rule 60(b)(6) warranted relieving Hi-Tech of a final contempt judgment. Hi-Tech cannot show that the district court abused its discretion.

### A.   The district court correctly denied relief under Rule 60(b)(5).

#### 1.   Rule 60(b)(5) applies only to "prospective" judgments, not to a monetary judgment such as Hi-Tech is attacking here.

Rule 60(b)(5) authorizes district courts to "relieve a party . . . from a final judgment" when "applying [the judgment] prospectively is no longer equitable."

The Rule's plain language allows relief "only when the judgment operates prospectively." *Cook v. Birmingham News*, 618 F.2d 1149, 1153 (5th Cir. 1980).[6]

Hi-Tech's Rule 60(b) motion seeks relief from a judgment requiring it to pay money, and the law is clear that monetary judgments do not operate prospectively. Hi-Tech cites no case, and we are aware of none, relieving a litigant from an unpaid money judgment under Rule 60(b)(5).

"[J]udgments operate 'prospectively' within the meaning of Rule 60(b)(5) if they 'involve the supervision of changing conduct or conditions.'" *Griffin v. Sec'y, Fla. Dep't of Corr.*, 787 F.3d 1086, 1091-93 (11th Cir. 2015) (collecting cases interpreting "prospectively"). For example, injunctions that require supervised institutional reorganizations or ongoing monitoring are prospective under the Rule. *See, e.g.*, *Agostini v. Felton*, 521 U.S. 203, 215-18 (1997) (injunction requiring supervision of New York City educational program).

A judgment to pay money, however, "offers a present remedy for a past wrong as contrasted with any judgment that has an on-going or prospective effect such as an injunction." *McDonald v. Oliver*, 642 F.2d 169, 171-72 (5th Cir. Apr. 10, 1981). Thus, "the effects of a money judgment" are "not a 'prospective effect' within the meaning of rule 60(b)(5)." *Gibbs v. Maxwell House*, 738 F.2d 1153,

---

[6] Fifth Circuit decisions issued before October 1, 1981 are Circuit precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

16

1155-56 (11th Cir. 1984). While an unsatisfied money judgment "may be 'prospective' to the extent that [a defendant] has failed to pay it in a timely manner, it is nevertheless a final order and is not 'prospective' for purposes of Rule 60(b)(5)." *Stokors S.A. v. Morrison*, 147 F.3d 759, 762 (8th Cir. 1998); *see also Norgaard v. DePuy Orthopaedics*, 121 F.3d 1074, 1077 (7th Cir. 1997) (Easterbrook, J.); *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 419 (5th Cir. 2018) (settlement agreement requiring payment of money is "akin to a money judgment" and thus not prospective).

Hi-Tech has not cited any case to the contrary, and it misses the mark in arguing that the contempt sanction of $40 million is equitable relief. Br. 37-38. The plain language of Rule 60(b)(5) does not apply to monetary judgments because they are not prospective, whether or not the specific judgment is grounded in law or equity. No case supports Hi-Tech's claim that equitable monetary judgments merit different treatment under Rule 60(b)(5) than other money judgments. Hi-Tech's cases, Br. 38-39, merely address what relief is considered equitable, which does not determine whether the judgment operates prospectively. As discussed, this Court and others have expressly held that orders to pay money for past wrongdoing are not prospective and thus not eligible for relief under Rule 60(b)(5). *See, e.g.*, *McDonald*, 642 F.2d at 171-72; *Stokors*, 147 F.3d at 762; *see also Gibbs*, 738 F.2d at 1155-56.

17

Hi-Tech is also wrong that the 2017 contempt judgment operates prospectively because the district court must "oversee and make decisions about the administration and distribution of collected funds," Br. 38. "That a court's action has continuing consequences . . . does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5)." *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138-40 (D.C. Cir. 1988). Moreover, the main point of Hi-Tech's Rule 60 motion was relief from collection of the judgment, not from the distribution of collected money.[7] *See* Mot. at 1-3, 13, 16, 19, 22-23. If Hi-Tech were correct that court oversight over the continuing disposition of money paid under a judgment could render the entire judgment "prospective," that would serve only to benefit recalcitrant defendants like Hi-Tech while neutering the limits of Rule 60(b)(5). The district court correctly determined that the $40 million judgment was not prospective. Op. 8.

### 2. The district court properly exercised its discretion in finding that equity did not favor relief.

Even if Hi-Tech could show that the 2017 contempt sanction amounted to a prospective judgment, its request for relief under Rule 60(b)(5) would still fail. Rule 60(b)(5) relief is available only when enforcing a judgment is "no longer

---

[7] We address in Section II below Hi-Tech's separate request for an accounting, which pertains to how collected funds are disbursed to consumers.

equitable" in the circumstances. And the district court acted well within its discretion in determining that equity does not favor Hi-Tech. Op. 9-10.

a. Hi-Tech concedes the relief it seeks is equitable in nature. Br. 23; Reply at 2 ("Equity is the entire basis for Defendants' motion."). And a litigant seeking equitable relief "must come into court with clean hands." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241, 244-46 (1933); *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005) ("The doctrine of 'unclean hands' is an equitable test that is used by courts in deciding equitable fate.").

Here, four years after the district court ordered Hi-Tech to pay $40 million in compensatory sanctions for violating a prior injunction entered by the court, the only reason Hi-Tech had any "relief" left to request is that Hi-Tech has persistently refused to comply in good faith with the court's contempt judgment. *See* Op. 9. That recalcitrance comes on top of Hi-Tech's willful disregard of the district court's 2008 injunction and its hiding of assets and false reporting to the FTC. *Id.*

In all, Hi-Tech has a persistent track record of flouting court orders, obstructing efforts to collect on final monetary judgments, and failing to voluntarily pay any meaningful portion of the judgments entered against it. *See id.*; *Nat'l Urological*, 786 Fed. Appx. at 954-57; *see also, e.g.*, Dkts. 720 at 2, 966 at 131, 978 at 4. That conduct closes the doors of equity to it. *Keystone Driller*, 290 U.S. at 244-45; *see Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 128-29 (2d Cir.

2009) (holding that defendants' persistent history of noncompliance precludes Rule 60(b) relief). Litigants who demonstrate such "utter disregard" for a district court's orders through a "flat-out refusal to comply" may not seek "post-judgment, equitable relief" through Rule 60(b). *Motorola*, 561 F.3d at 128; *see also NOW v. Operation Rescue*, 47 F.3d 667, 669 (4th Cir. 1995) (defendants' "unclean hands" made them "undeserving of the benefits of equitable relief" through Rule 60(b)(5) or (6)).

b. Even if Hi-Tech's conduct were not a bar to invoking the powers of equity, it cannot satisfy its burden of showing that continued application of the 2017 contempt judgment would be inequitable.

i. At the outset, Hi-Tech misplaces its reliance (Br. 48-52) on the Supreme Court's 2021 decision in *AMG*. By the time that the Supreme Court issued *AMG*, the contempt judgment in Hi-Tech's case was already final. This Court had affirmed the 2017 judgment, and the Supreme Court had denied certiorari. *FTC v. Nat'l Urological Grp., Inc.*, 786 Fed. Appx. 947, 951-52 (11th Cir. 2019), *cert. denied*, 141 S. Ct. 659 (2020).

"When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases *still open on direct review*." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) (emphasis added). Supreme Court decisions

20

have no effect on a final monetary judgment for which "the availability of appeal has been exhausted or has lapsed, and the time to petition for certiorari has passed." *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711 n.14 (1974) (cleaned up).[8] Indeed, even as Hi-Tech argued that *AMG* justified relieving it from the $40 million judgment, Hi-Tech conceded below "that the ruling in *AMG Capital* is not retroactive and thus does not apply to the $15.9 million [judgment]." Op. 6; *see also* Reply at 2 (claiming Hi-Tech has "never argued that *AMG Capital* should be given retroactive application").

In addition, as the district court correctly recognized (Op. 11-12), *AMG*'s analysis "has no bearing" on the legal basis for the 2017 contempt judgment. In *AMG*, the Supreme Court ruled that in granting authority to district courts to enter a "permanent injunction," Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), does not also grant the authority to order equitable monetary remedies. Here, Hi-Tech asks for relief from a civil contempt judgment, a type of judgment *AMG* did not address and does not apply to. Hi-Tech tries to gloss over this critical fact (*see, e.g.*, Br. 25-26), but the nature of the judgment makes clear that *AMG* provides no basis for undoing it.

---

[8] *See also Parks v. U. S. Life & Credit Corp.*, 677 F.2d 838, 840-41 (11th Cir. 1982) (emphasizing "strong interest in the finality of litigation" in closed cases); *Teague v. Lane*, 489 U.S. 288, 308 (1989) (plurality opinion) (overruled on other grounds); *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed.").

District courts have "extremely broad and flexible powers" to address violations of their orders through civil contempt. *FTC v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013) (*Leshin II*). That power comes not from a statute, but from courts' own "inherent power to enforce compliance with their lawful orders." *Shillitani v. United States*, 384 U.S. 364, 369 (1966); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193-95 (1949); *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515-16 (11th Cir. 1987).

Courts have long recognized that compensatory contempt relief is separate from relief awarded for violation of a statute, even where both result in similar monetary awards. In *McComb*, the Supreme Court distinguished a court's power to order restitution for a statutory violation from the court's power to order similar relief through contempt. *Id.* at 193. Contempt relief, the Court explained, "may entail the doing of a variety of acts," including "the payment of money" – regardless of whatever power the statute may confer to seek similar relief in a direct enforcement suit. *Id.* at 193-94.

This Court has similarly observed that the "imposition of a contempt sanction for disobeying a court order" derives from a court's own "inherent authority to ensure compliance with its orders" and is altogether separate from the remedies available through the statute underlying the proceeding. *Guardian Pools*, 828 F.2d at 1513-16. The Court accordingly has held that a district court may order

22

in contempt a monetary remedy that is unavailable under the statute originally violated. *Id.* Other courts agree. *E.g.*, *Am. Airlines v. Allied Pilots Ass'n*, 228 F.3d 574, 584-85 (5th Cir. 2000).

Hi-Tech is thus wrong that "if Congress has not given the FTC the authority to obtain equitable monetary relief, then the district court cannot provide it, even by virtue of its inherent equitable powers." Br. 46; *see also* Br. 25 (claiming that "the courts lack the power to award a remedy that the FTC lacks the authority to obtain"), 27. Nor can Hi-Tech escape liability by labeling the contempt judgement "equitable monetary relief" (Br. xii), "disgorgement and consumer redress" (Br. 1, 3, 25), an "equitable monetary remedy" (Br. 17), a "disgorgement remedy" (Br. 33), and even – incorrectly – "an equitable monetary judgment, imposed under the FTC Act for violation of the FTC Act" (Br. 26). A contempt judgment entered by a district court for violation of a prior court order is separate and distinct from a monetary judgment rendered under the FTC Act.[9] In federal courts, "unless otherwise provided by statute, all inherent equitable powers are available for the proper and complete exercise of [the court's] jurisdiction." *SEC v. Liu*, 140 S. Ct. 1936, 1946-47 (2020) (cleaned up).

---

[9] Hi-Tech mistakenly relies on *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015), and *Axon Enter., Inc. v. FTC*, 986 F.3d 1173 (9th Cir. 2021), neither of which involved contempt or establish that Congress intended the FTC Act "to narrow district-court jurisdiction and powers" of contempt. *See* Br. 46.

23

For this reason, the courts that have addressed this issue uniformly have held that *AMG* does not affect contempt judgments. These courts rightly recognize that "contempt remedies are not limited by the bounds of the FTC Act," and that courts have broad power to order "the payment of damages caused by violations of the decree up to the requirements of full remedial relief." *FTC v. Acquinity Interactive, LLC*, No. 14-60166-Civ, 2021 U.S. Dist. LEXIS 152555, at *23-28 (S.D. Fla. Aug. 13, 2021) (cleaned up).[10] The court's power to enter a monetary contempt sanction remains in full force even when a court could not award monetary relief under Section 13(b).[11] *See McComb*, 336 U.S. at 193; *Guardian Pools*, 828 F.2d at 1516; *Am. Airlines*, 228 F.3d at 584.

Hi-Tech is also flatly wrong that a district court lacks the power to award disgorgement and redress as a remedy for contempt. Br. 46. This Court has recognized time and again that "the inherent equitable powers of the federal courts authorize the district court to order payment of consumer redress" as a contempt sanction. *McGregor v. Chierico*, 206 F.3d 1378, 1387 (11th Cir. 2000); *Leshin II*,

---

[10] *See also FTC v. Noland*, No. CV-20-00047, 2020 U.S. Dist. LEXIS 226584, at *11-12 (D. Ariz. Dec. 3, 2020) ("[T]he FTC may still seek monetary relief through the contempt action, regardless of the outcome of *AMG Capital*."); *In re Sanctuary Belize Litig.*, No. 18-3309, 2021 U.S. Dist. LEXIS 159793, at *4-5 (D. Md. Aug. 24, 2021) (holding that the district court's contempt findings "would not be affected by a decision in *AMG*").

[11] Hi-Tech is thus not aided by its references to law review articles on Section 13(b). *See* Br. 7-9, 19, 32-35.

19 F.3d at 1231-35 (disgorgement is a permissible remedy for civil contempt). Such decisions rest on the Supreme Court's recognition that courts' contempt powers extend to "full remedial relief." *McComb*, 336 U.S. at 193. "[C]ourts have long imposed civil contempt sanctions" to "compensate the complainant for losses stemming from the defendant's noncompliance with an injunction." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801-02 (2019). This precedent remains unchanged by *AMG*.

ii. Hi-Tech is doubly wrong in contending that under the Supreme Court's decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), the district court's $40 million contempt sanction is "improperly punitive" and therefore inequitable. Br. 30. *Kokesh* held that an SEC monetary judgment in equity was a "penalty" for purposes of the general federal statute of limitations, 28 U.S.C. § 2462. Nothing in *Kokesh* supports Hi-Tech's claim that the 2017 contempt judgment against Hi-Tech constitutes a penalty that cannot be sustained as a matter of equity.

At the outset, Hi-Tech waived this argument by failing to raise it at any point below even though *Kokesh* was decided well before Hi-Tech's Rule 60 motion and also before Hi-Tech's 2018 appeal of the contempt ruling. *See McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1495-97 (11th Cir. 1990) (en banc) (declining to apply new decision where litigant did not previously raise the issue decided).

25

In any event, the argument fails on the merits. Civil contempt sanctions imposed to compensate those harmed by contemptuous acts are not punitive. *See United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947); *FTC v. Leshin*, 618 F.3d 1221, 1238-39 (11th Cir. 2010) (*Leshin I*) (sanctions intended to compensate consumers are not punitive); *see also In re E.I. DuPont de Nemours & Co.-Benlate Litig.*, 99 F.3d 363, 368-69 (11th Cir. 1996) (contempt order with "no compensatory aspect" was punitive). *Kokesh* did not involve contempt, and the Court explained that even for purposes of the statute of limitations at issue there, only "a *noncompensatory* sanction" for a legal violation "operates as a penalty." 137 S. Ct. at 1644.

Hi-Tech's claims that hypothetical leftover funds from the $40 million judgment might go to the U.S. Treasury, Br. 33, 36, also ring hollow. The 2017 Contempt Order does not order such disgorgement or even mention the Treasury. *See* 2017 Contempt Order, at 130-31 (stating district court will determine how leftover funds, if any, should be spent). Moreover, the possibility of leftover funds is highly speculative at this point, given that over $37 million of the contempt judgment remains uncollected because of Hi-Tech's contumacious refusal to pay. At any rate, Hi-Tech never challenged the judgment on this basis, and cannot do so now through Rule 60(b). *See Horne v. Flores*, 557 U.S. 443, 447 (2009).

26

Hi-Tech is likewise not aided by its argument that the 2008 order to repay defrauded consumers was improper because the Commission did not undertake an administrative proceeding before seeking that monetary relief from the district court. Br. 4-5, 29. Hi-Tech has requested Rule 60(b) relief only from the district court's 2017 contempt judgment, not from the court's 2008 order.[12] *See* Mot. 13, 19, 23; Reply at 1, 6-7; Op. 4, 6 (noting that Hi-Tech "agree[s] with the FTC that the ruling in *AMG Capital* is not retroactive and thus does not apply to the $15.9 million monetary relief").

Moreover, before the 2021 decision in *AMG*, the FTC could proceed directly in court to recover equitable monetary remedies under Section 13(b). *See AMG*, 141 S. Ct. at 1346-47, 1351; *FTC v. On Point Capital Partners LLC*, 17 F.4th 1066, 1078 (11th Cir. 2021) (recognizing that prior to *AMG*, Eleventh Circuit precedent allowed the FTC to obtain monetary relief directly in court). Thus, to the degree Hi-Tech now attempts to challenge the 2008 order based on *AMG*, its claim boils down to a proposed retroactive application of *AMG*, which does not apply to a long-settled judgment, *see, e.g.*, *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995); *Federated Dep't Stores*, 452 U.S. at 398. Indeed, as discussed, Hi-

---

[12] Nor did Hi-Tech raise this issue in its 2014 Rule 60(b) motion, where it sought relief from the $15.9 million judgment on other grounds. *See* Dkt. 642-1 at 6-10.

Tech itself conceded below that it has "never argued that *AMG Capital* should be given retroactive application." Reply at 2; *see also* Op. 6.

Finally, there is no merit to Hi-Tech's argument that the contempt judgment cannot be equitably enforced because it has taken years to provide redress money to harmed consumers. *See* Br. 9-10, 47-48. The district court correctly observed that the delays complained of by Hi-Tech stemmed from Hi-Tech's own long-running refusal "to voluntarily pay on the judgment," and not from any deficiency in the Commission's redress program. Op. 9. The only inequitable conduct at play is Hi-Tech's own "persistent contumacy." *Nat'l Urological*, 786 Fed. Appx. at 955; *see also Motorola*, 561 F.3d at 128-29.

**B. The district court acted within its discretion in finding that Hi-Tech failed to show the "extraordinary circumstances" required by Rule 60(b)(6).**

For many of the same reasons discussed above, the district court also properly denied relief under Rule 60(b)(6), a catchall provision that permits a court to reopen a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "Relief under Rule 60(b)(6) is available only in 'extraordinary circumstances.'" *Buck v. Davis*, 137 S. Ct. 759, 777-78 (2017); *see also Ackermann*, 340 U.S. at 199-202. "Even then, whether to grant the requested relief is . . . a matter for the district court's sound discretion." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000).

28

Hi-Tech comes nowhere close to showing that the district court was legally required to find extraordinary circumstances here. Cases meriting relief under Rule 60(b)(6) typically present "compelling or aggravated circumstances involving extreme hardship and injustice." *McDonald*, 642 F.2d at 171-72 (cleaned up); *Ackermann*, 340 U.S. at 199-202; *Swim-Tech*, 722 F.2d at 680. To give one example, in *Klapprott v. United States*, 335 U.S. 601 (1949), the Supreme Court held that Rule 60(b)(6) relief was warranted from a default judgment entered while the defendant was ill, imprisoned, facing criminal charges, and without access to a lawyer. *Id.* at 613-15.

The best Hi-Tech can manage here is an observation that the law governing the district court's 2008 order changed during the time when it refused to pay the 2017 contempt judgment. But a change in decisional law, without more, does not constitute an "extraordinary circumstance" for purposes of Rule 60(b)(6). *Gonzalez*, 545 U.S. at 536-37; *Arthur v. Thomas*, 739 F.3d 611, 631-33 (11th Cir. 2014); *Agostini*, 521 U.S. at 239 ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)."); *see also Lambrix*, 851 F.3d at 1171. A change in precedent "is hardly extraordinary," and does not justify "reopening cases long since final" that correctly applied the previous interpretation. *Gonzalez*, 545 U.S. at 536-37; *see*

*also Reynoldsville Casket*, 514 U.S. at 758 ("New legal principles . . . do not apply to cases already closed.").

Acknowledging that its request fails under controlling law, Hi-Tech asks the Court to change that law. Br. 50. But even if a panel of the Court could do so, the Court should not.[13] Given the frequency of new judicial decisions, requiring movants to show something more for relief under Rule 60(b)(6) makes good sense. "[T]he common law could not safely develop if the latest evolution in doctrine became the standard for measuring previously resolved claims." *Norgaard*, 121 F. 3d at 1076 (cleaned up). The need "for order and predictability in the judicial process" thus "speaks for caution in the reopening of judgments." *Swim-Tech*, 722 F.2d at 680.

In any event, this case would be a particularly poor vehicle to overturn the law. Hi-Tech's claim for post-judgment relief rests almost entirely on *AMG*. Br. 48-52. But as discussed above, *AMG* has no bearing on courts' contempt powers. *See* pp. 20-24, *supra*. Thus, the law pertinent to the 2017 judgment that Hi-Tech attacks here has not changed at all since the judgment.

Hi-Tech's vague allusion to "agency overreach," Br. 51, fares no better. The 2008 injunction was unquestionably lawful, and Hi-Tech brazenly violated it –

---

[13] Under the "prior panel rule," a panel of this Court is "bound by earlier panel holdings . . . unless and until they are overruled en banc or by the Supreme Court." *United States v. Smith*, 122 F.3d 1355, 1359 (11th Cir. 1997).

pilfering $40 million from innocent victims in the process. *See Nat'l Urological*, 786 Fed. Appx. at 954-60; Op. 3, 6. No agency overreach is implicated by the 2017 contempt sanction, which the district court imposed for Hi-Tech's violation of the 2008 injunction.

Indeed, Hi-Tech's extraordinary run of contumacious conduct by itself justifies denying any relief. At various points in the nearly 18-year history of this litigation, Hi-Tech "dissipated assets," Dkt. 978 at 4; showed "an intentional defiance of the court's injunctions," "repeatedly provided inaccurate and incomplete information in compliance reports submitted to the FTC," and "did not attempt in good faith to pay" court-ordered judgments, Dkt. 966 at 131; failed to cooperate with collection efforts, Dkt. 720 at 2; and "continue[s] to refuse to voluntarily pay the judgment," Dkt. 1104 at 9. This Court has described appellants as "calculating actors" who "deliberately engaged in self-serving activities they knew seriously risked violating the injunction," and who should not be permitted to avoid "'accountability for [their] persistent contumacy.'" *Nat'l Urological*, 786 Fed. App'x at 955. Denying Rule 60(b)(6) relief to such undeserving movants was well within the district court's discretion.

## II.    THE DISTRICT COURT PROPERLY DECLINED TO ORDER AN ACCOUNTING.

The district court properly denied Hi-Tech's request for an accounting of all monies collected under either the 2008 judgment or the 2017 contempt judgment.

As the court noted, Hi-Tech had not shown good reason for an accounting. Op. 13-16; *see also* Br. 52-53; Mot. 19-22. The denial was well within the court's discretion.

To begin, Hi-Tech identifies no authority that would compel the district court to order an accounting. Hi-Tech discusses only one case ordering an accounting, which Hi-Tech did not even cite below. *See* Br. 52-53 (citing *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145 (11th Cir. 2019)). And that case involved a district court's "duty to class [action] members to see that any settlement it approves is completed." *Managed Care*, 939 F.3d at 1162-63 (cleaned up). Hi-Tech's referenced case did not address a general accounting of funds collected to satisfy a litigated judgment. *Id.*

Moreover, as the district court recognized, the express terms of the 2008 injunction prohibit Hi-Tech "from challenging how funds collected" under the 2008 judgment "are distributed or applied." Op. 14; Dkt. 230 at 18-19 (Hi-Tech "shall have no right to challenge the Commission's choice of remedies . . . or the manner of distribution chosen by the Commission"). Seeking an accounting is exactly that sort of prohibited challenge. Moreover, the injunction specifies the disposition of such money from the 2008 judgment that is not distributed to victims, and in no event would money go to Hi-Tech, as Hi-Tech now requests (Br. 48). *See* Dkt. 230 at 18-19 (Section IX. D) (authorizing the Commission to direct

remaining funds to other relevant equitable relief and then to deposit unused funds to the Treasury); Op. 15. Hi-Tech therefore has no "legally protected interest" in that money and thus no standing to seek an accounting. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-62 (1992).

Nor is there any good reason for an accounting. As to the 2008 judgment, nearly all of the collected funds have been sent to harmed consumers already; the final batch of checks was mailed out in March of this year. *See FTC sends refunds for deceptively marketed dietary supplements*, available at https://www.ftc.gov/ enforcement/refunds/national-urological-refunds (March 2022). The length of the consumer redress process was caused by Hi-Tech's own dogged attempts to avoid paying a judgment it had ample resources to satisfy. By contrast, in the case that Hi-Tech misplaces its reliance upon, the defendant had paid $25 million that should have been distributed to class members, but over $12 million was missing. *See Managed Care*, 939 F.3d at 1162-63.[14]

As for the 2017 contempt judgment, Hi-Tech's demand for an accounting ignores that the contemnors have not paid a single cent of that judgment voluntarily, and that just $2.3 million of the $40 million has been collected through garnishments. Br. 18; Op. 16. That money is being held in the Registry of the

---

[14] The district court also recognized that the information Hi-Tech seeks through an accounting is available through other means. Op. 16. Not so in *Managed Care*.

Court (as required by the 2017 Contempt Order), so there is no mystery as to its whereabouts or status. *See generally* Dkts. 1050, 1093, 1094; Br. 30. Hi-Tech is "aware of how much has been collected and the balance that remains outstanding," Op. 16, and as the Commission explained below, it makes practical sense to wait until more money is collected before issuing checks to consumers. *See* FTC Opp. at 14 ("Because sending checks costs money, and because consumers are more likely to cash larger checks, redress requires adequate funding."). Hi-Tech's more general critiques of the Commission's consumer redress program, Br. 9, 11, show no entitlement to an accounting – and are flatly wrong.[15]

Finally, any complaint about potential leftover money from the 2017 contempt judgment is not yet ripe. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-9 (1967) (ripeness doctrine prevents the courts "from entangling themselves in abstract disagreements" before a particular action has concrete effects). The district court specifically ordered that if any funds remain after distribution to consumers,

---

[15] Hi-Tech grossly mischaracterizes the FTC's consumer redress data when it claims that in 2017, consumers received only $269 million out of $5.29 billion obtained by the agency. Br. 9. The larger figure includes civil penalty amounts that are not intended for consumer redress and must be disgorged to the Treasury by statute. Moreover, funds often are not disbursed the same year they are collected, and in some cases are paid directly from defendants to consumers. In fact, the FTC's redress program returns the vast majority of compensatory judgments to consumers. Between 2016 and 2020, for example, nearly 95% of FTC payouts went to consumers, with only about 3% going to administrative costs and 2% to the Treasury. *See Data on Refunds to Consumers*, https://www.ftc.gov/enforcement/recent-ftc-cases-resulting-refunds/data-refunds-consumers (accessed May 4, 2022).

"the court will then make a determination of the appropriate distribution of those funds." 2017 Contempt Order, at 131; *see* Br. 40-41. Hi-Tech contends that the government paying any leftover redress funds "to itself" in the future would amount to an improper penalty, Br. 52, but that outcome depends on two layers of speculation: (1) that leftover funds will exist; and (2) that the district court will order them deposited in the Treasury.[16] Given that the 2017 contempt judgment "is not close to being satisfied," Op. 16, Hi-Tech's hypothesizing about possible leftover funds "is plainly the type of hypothetical case that [courts] should avoid deciding." *Ass'n for Children for Enf't of Support, Inc. v. Conger*, 899 F.2d 1164, 1165-66 (11th Cir. 1990); *cf. Liu*, 140 S. Ct. at 1948-49. Denying the accounting was well within the district court's discretion.

## CONCLUSION

The judgment of the district court should be affirmed.

---

[16] Even then, whether such a deposit would be improper may depend on additional facts not yet developed. *See Ass'n for Children*, 899 F.2d at 1166.

Respectfully submitted,

ANISHA S. DASGUPTA
    *General Counsel*

JOEL MARCUS
    *Deputy General Counsel*

May 4, 2022                    /s/ Mariel Goetz
                              MARIEL GOETZ
                                  *Attorney*

                              FEDERAL TRADE COMMISSION
                              600 Pennsylvania Avenue, N.W.
                              Washington, D.C. 20580
                              (202) 326-2763
                              mgoetz@ftc.gov


                              Of Counsel:
                              AMANDA BASTA
                              CRYSTAL D. OSTRUM
                              EVAN M. MENDELSON
                                  *Attorneys*

                              FEDERAL TRADE COMMISSION
                              Washington, D.C. 20580

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains **8,271** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and that it complies with the typeface requirements of Fed. R. Appl. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Microsoft Word for Microsoft 365 MSO in 14 point Times New Roman type.

May 4, 2022                                    /s/ Mariel Goetz_____
                                               Mariel Goetz