

UNITED STATES OF AMERICA
Federal Trade Commission
Washington, D.C. 20580

Mariel Goetz
Office of General Counsel
Phone: (202) 326-2763
Email: mgoetz@ftc.gov

July 20, 2023

David J. Smith, Clerk of Court
United States Court of Appeals
 For the Eleventh Circuit
56 Forsyth St., NW
Atlanta, Georgia 30303

     RE:   *FTC v. National Urological Group, Inc., et al*., No. 21-14161 (oral argument held July 18, 2023)

Dear Mr. Smith:

Yesterday the Fourth Circuit issued the attached decision in *FTC v. Ross*, No. 22-2078. The *Ross* decision further supports the FTC's arguments in this case.

*Ross* affirmed a district court's denial of Rule 60(b) relief from a $163 million judgment entered under Section 13(b) of the FTC Act. The Fourth Circuit held that the Supreme Court's decision in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021), did not justify relief under Rule 60(b)(4) or (b)(6). With respect to Rule 60(b)(6), which is also at issue here, *Ross* held the change in law announced in *AMG* did not constitute the "extraordinary circumstances" necessary for such relief, even though Ross had raised in her direct appeal the argument that ultimately prevailed in *AMG*. Op. 13-15. *Ross* is consistent with the Ninth Circuit's recent decision in *FTC v. Hewitt*, which we addressed in a prior Rule 28(j) letter (DE 52), and the Fourth Circuit cited *Hewitt* with approval. Op. 11, 14-15.

　　　　Here, as discussed in our brief and at oral argument, the judgment against Hi-Tech is a contempt judgment, not a Section 13(b) judgment. *AMG* does not apply to contempt judgments, so there is no basis for relief under either Rule 60(b)(5) or (b)(6). *See* FTC Br. 11-13, 21-25, 30. Even so, *Ross* provides further confirmation that the *AMG* decision is not an extraordinary circumstance that provides a basis for relief under Rule 60(b)(6).

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　/s/ *Mariel Goetz*

　　　　　　　　　　　　　　　　Mariel Goetz
　　　　　　　　　　　　　　　　Attorney for the Federal Trade Commission

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-2078

FEDERAL TRADE COMMISSION,

        Plaintiff - Appellee,

    v.

KRISTY ROSS, individually, and as officer of Innovative Marketing, Inc.,

        Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, Senior District Judge. (1:08-cv-03233-RDB)

Argued: May 3, 2023                                Decided: July 19, 2023

Before DIAZ, Chief Judge, RUSHING, Circuit Judge, and FLOYD, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Floyd wrote the opinion in which Chief Judge Diaz and Judge Rushing joined.

**ARGUED:** Robert P. Greenspoon, DUNLAP, BENNETT & LUDWIG, Chicago, Illinois, for Appellant. Matthew Michael Hoffman, FEDERAL TRADE COMMISSION, Washington, D.C., for Appellee. **ON BRIEF:** William W. Flachsbart, DUNLAP, BENNETT & LUDWIG, Chicago, Illinois, for Appellant. Anisha S. Dasgupta, General Counsel, Joel Marcus, Deputy General Counsel, Matthew M. Hoffman, Miriam R. Lederer, FEDERAL TRADE COMMISSION, Washington, D.C., for Appellee.

FLOYD, Senior Circuit Judge:

Defendant-Appellant Kristy Ross victimized over a million Americans by furthering a country-wide "scareware" scam that tricked innocent computer users into paying for unnecessary software to remedy entirely fabricated issues purported to plague their devices. An apparent fugitive—having sought for years to evade paying even a cent of the $163,167,539.95 in restitution ordered for her role in the scheme—Ross now seeks vacatur of that aging monetary judgment. For the reasons that follow, we affirm.

I.

In the early 2000s, Ross was a vice president of Innovative Marketing, Inc.—a company perpetrating a country-wide "scareware" scam that tricked more than one million Americans into purchasing unnecessary software to fix computer issues that did not exist. Ross helped to develop software advertisements and pop-ups that falsely represented to viewers that their computers were infected by malicious software and viruses, contained illegal pornography, or were about to suffer critical system failures. The advertisements offered remedial software (for purchase) for the fraudulently represented issues. Costs of the remedial software ranged anywhere from $30 to $100. Once purchased by desperate device owners, not only did the software do nothing to fix the purported issues—those issues never existed—but reputable computer-security vendors considered the fraudsters' software to itself be harmful to purchasers' devices. In the course of the scam, Ross and her co-conspirators fraudulently accumulated more than $160 million. Reaping the fruits of her duplicitous scheme, Ross enjoyed a lavish life with scam proceeds, frequenting Four

2

USCA11 Case: 21-14161     Document: 55     Date Filed: 07/20/2023     Page: 5 of 18

Seasons resorts abroad and shopping at luxury retailers.

In 2008, the Federal Trade Commission ("FTC") sued Ross, alleging that the scareware scam violated Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), which prohibits unfair or deceptive practices in or affecting commerce.[1] The FTC specifically sought relief via the FTC Act's injunctive provision, Section 13(b), 15 U.S.C. § 53(b). Under that provision, the agency may seek to enjoin any entity from conduct believed to be in violation of the Act. Tied to its request for statutory injunctive relief via Section 13(b), the FTC also sought an equitable monetary judgment to fund consumer redress.

In 2012, the case against Ross proceeded to a bench trial. *See Fed. Trade Comm'n v. Ross* (*Ross I*), 897 F. Supp. 2d 369 (D. Md. 2012). The district court entered judgment in favor of the FTC and against Ross. The court permanently enjoined and restrained Ross's participation in any "marketing [or] sale of computer security software and software that interferes with consumers' computer use as well as from engaging in any form of deceptive marketing." *Id.* at 389; J.A. 78. It also held her jointly and severally liable with her co-defendants for consumer redress in the amount of $163,167,539.95. *Ross I*, 897 F. Supp. 2d at 389.

Ross timely appealed. As relevant here, she argued that the district court lacked the authority to impose an equitable monetary judgment under the FTC Act's injunctive provision—Section 13(b). This Court affirmed in 2014, joining every other circuit to

---

[1] Notably, the FTC also sued many of Ross's colleagues, but each either settled or defaulted. Ross is the only defendant who proceeded to trial.

3

address the issue (including the First, Second, Third, Seventh, Eighth, Ninth, Tenth, and Eleventh) by holding that Section 13(b) impliedly granted district courts the authority to award consumer redress as an equitable component of the injunctive provision. The Court reasoned that "[a] ruling in favor of Ross would forsake almost thirty years of federal appellate decisions and create a circuit split, a result that we will not countenance in the face of powerful Supreme Court authority pointing in the other direction." *Fed. Trade Comm'n v. Ross* (*Ross II*), 743 F.3d 886, 892 (4th Cir. 2014). The Court further reasoned that Ross's argument "attempt[ed] to obliterate a significant part of the [FTC's] remedial arsenal." *Id.* Notably, since this Court's affirmance, Ross has not paid a penny toward satisfying the monetary judgment for consumer redress. Resp. Br. 5. Her whereabouts are unknown, and she is believed to have fled the United States. *Id.*

In April 2021—nearly a decade after the district court entered judgment against Ross—the Supreme Court decided *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341 (2021). There, the Court wiped out the almost entirely uniform approach of the federal circuits[2] to the question of whether Section 13(b) authorized equitable monetary relief. Rather, the Court held that Section 13(b) authorized only injunctive relief. *AMG*, 141 S. Ct. at 1349, 1352 ("[The FTC Act] does not grant the [FTC] authority to obtain equitable monetary relief."). Five months after the issuance of the Supreme Court's decision in *AMG*, Ross moved to vacate the restitution portion of the

---

[2] In 2019—after this Court's decision in Ross's direct appeal but before *AMG*—the Seventh Circuit deviated from the rest of the federal circuits on the question of whether Section 13(b) permitted equitable monetary awards. *See Fed. Trade Comm'n v. Credit Bureau Ctr.*, 937 F.3d 764 (7th Cir. 2019).

4

judgment against her. She argued that the equitable monetary judgment was void under Federal Rule of Civil Procedure 60(b)(4) because of a perceived post-*AMG* jurisdictional defect, and, additionally or alternatively, because "extraordinary circumstances" justified vacatur under Rule 60(b)(6).

The district court denied Ross's motion. *See Fed. Trade Comm'n v. Ross* (*Ross III*), No. RDB-08-3233, 2022 WL 4236339, at *4 (D. Md. Sept. 14, 2022). Regarding Rule 60(b)(4), the court held that the monetary judgment was not void because the remedial provisions of Section 13(b) are not jurisdictional in nature and because, at the time of judgment, an arguable basis existed for the monetary remedy given that other circuits uniformly permitted such a remedy under that provision. *Id.* at *3. Regarding Rule 60(b)(6), the court held that, in the Fourth Circuit, a subsequent change in law does not amount to an "extraordinary circumstance" justifying relief. *Id.* at *4. The court further declared that so much time had passed since the entry of judgment that the interest of finality weighed heavily against a finding of extraordinary circumstances. *Id.* Ross timely appealed.

II.

We review a district court's denial of a Rule 60(b)(4) motion de novo. *United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018) (citation omitted). Meanwhile, we review a district court's denial of relief sought under Rule 60(b)(6) for abuse of discretion. *Id.* (citation omitted).

Importantly, an appeal of a district court's denial of Rule 60(b) relief "does not bring

5

up the underlying judgment for review." *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (en banc) (citation omitted). "[A] fundamental precept of [] adjudication is that an issue once determined by a competent court is conclusive." *Arizona v. California*, 460 U.S. 605, 619 (1983) (citations omitted). This precept ensures "that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) (citation omitted). Consequently, new decisions are given retroactive effect in "all cases still open on direct review," *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993), but they "do not apply to cases already closed," *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995). To be sure, Rule 60(b) allows district courts to reopen a judgment post-direct appeal in "a limited set of circumstances," and it is meant to "make an exception to finality." *Gonzalez v. Crosby*, 545 U.S. 524, 528–29 (2005). But this exception to finality is not to be abused. *See Aikens*, 652 F.3d at 501 ("[A] very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 873 (1988) (Rehnquist, C.J., dissenting))). We consider Rule 60(b)(4) and (b)(6) in turn.

A.

Beginning with Rule 60(b)(4), Ross argues that the monetary relief portion of the district court's judgment should be deemed void in light of *AMG* because that decision deprived the FTC of Article III standing to seek such relief, thereby stripping the district

6

court of subject matter jurisdiction. *See, e.g.*, Opening Br. 13 ("[T]he district court lacked subject matter jurisdiction (for want of standing by the FTC) to order monetary relief."). In other words, Ross seems to contend that because *AMG* wiped out a particular remedy, the FTC had no right to pursue it as a form of redress—redressability being a necessary component of Article III standing, and standing being a necessary component of subject matter jurisdiction. She further argues that the arguable-basis test does not apply to excuse any jurisdictional defect, and, even if it did, that there was no arguable basis for the district court's decision to exercise jurisdiction here.

The FTC first disputes whether *AMG*'s novel interpretation of a statutory remedy even relates to jurisdictional or standing analyses in the manner that Ross claims. The FTC also responds that the district court properly exercised jurisdiction over the claim and properly recognized the FTC's standing to assert it. Finally, the FTC argues that even if the district court erred, and we perceive *AMG* as retroactively narrowing jurisdiction and/or standing, the arguable-basis test excuses any defect. Rather, according to the FTC, an arguable basis supported a finding of standing at the time of judgment, so Rule 60(b)(4) voidness cannot apply now.

Rule 60(b)(4) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment . . . [if] the judgment is void." "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). But the list of "infirmities" triggering voidness "is exceedingly short[,] otherwise[] Rule 60(b)(4)'s exception to finality would swallow the rule." *Id.* For

7

example, "[a] judgment is not void . . . simply because it is or may have been erroneous." *Id.* (simplified).

Certain jurisdictional defects do give rise to colorable voidness arguments. *See id.* at 271. But, as the Supreme Court commented in *Espinosa*, "[f]ederal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id.* (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)); *see also United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661–62 (1st Cir. 1990) ("[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and . . . only rare instances of a clear usurpation of power will render a judgment void." (simplified)). Although the Supreme Court in *Espinosa* declined to reach precisely what constitutes a jurisdictional defect worthy of voidness relief under Rule 60(b)(4), and it did not itself expressly adopt the arguable-basis test, this Court seems to have done so. *See United States v. Welsh*, 879 F.3d 530, 533–34 (4th Cir. 2018); *see also Wendt v. Leonard*, 431 F.3d 410, 413 (4th Cir. 2005) ("[C]ourts must look for the rare instance of a clear usurpation of power [which is] only when there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction." (simplified)).

We preface our analysis of Ross's position with a clarification. Ross haphazardly invokes jurisdictional language throughout her briefing. For example, in her jurisdictional statement, she offers that "[t]he district court had jurisdiction over the FTC's request for injunctive relief under 13(b) of the FTC Act, 15 U.S.C. § 53(b), a federal question under

8

28 U.S.C. § 1331." Opening Br. 3. She then proceeds to declare that "the district court lacked subject matter jurisdiction (for want of standing by the FTC) to order monetary relief." *Id.* at 13. But the Supreme Court has declared that "the question [of] whether a court has jurisdiction to grant a particular remedy is different from the question [of] whether it has subject matter jurisdiction over a particular class of claims." *Biden v. Texas*, 142 S. Ct. 2528, 2540 (2022). It seems to us beyond reasonable dispute that the district court possessed subject matter jurisdiction given the FTC's allegations under 15 U.S.C. § 45(a)—i.e., a federal question. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."). Although constitutional standing certainly implicates federal jurisdiction given its cruciality to justiciability, we decline to construe Ross's position as implicating the district court's subject matter jurisdiction over claims brought under the FTC Act. Thus, we treat Ross's jurisdictional argument as only challenging the FTC's Article III standing to pursue the equitable monetary remedy in the original action.

As relevant here, the "irreducible constitutional minimum" of Article III standing consists of three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).

To begin, the parties dispute whether *AMG* truly implicates standing or instead represents only a merits consideration. *See* Resp. Br. at 15 (noting that the Supreme Court did not invoke standing or jurisdictional considerations in *AMG*). We need not decide this

9

issue. Assuming, *arguendo*, that *AMG* would undermine the FTC's standing to pursue restitution in a similar case today, this Court applies the arguable-basis test, and an arguable basis clearly supported the FTC's standing when the court below decided Ross's case. *See Welsh*, 879 F.3d at 533–34; *Wendt*, 431 F.3d at 413.

This Court has previously held that the mere disagreement of multiple authorities on a given issue evinced that an arguable basis for the competing perspectives existed. *See Wendt*, 431 F.3d at 414. At the time of judgment in Ross's case, *every* circuit to consider whether Section 13(b) impliedly permitted a district court to impose equitable monetary redress answered that question in the affirmative. *See, e.g.*, *Fed. Trade Comm'n v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 15 (1st Cir. 2010); *Fed. Trade Comm'n v. Bronson Partners, LLC*, 654 F.3d 359, 365 (2d Cir. 2011); *Fed. Trade Comm'n v. Mag. Sols., LLC*, 432 F. App'x 155, 158 n.2 (3d Cir. 2011); *Fed. Trade Comm'n v. Amy Travel Serv., Inc.*, 875 F.2d 564, 571–72 (7th Cir. 1989), *overruled by Credit Bureau Ctr.*, 937 F.3d 764; *Fed. Trade Comm'n v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991); *Fed. Trade Comm'n v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994); *Fed. Trade Comm'n v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005); *Fed. Trade Comm'n v. Gem Merch. Corp.*, 87 F.3d 466, 468–70 (11th Cir. 1996).

It was not until 2019 that the first federal circuit, the Seventh, deviated from this approach, *see Credit Bureau Ctr.*, 937 F.3d at 786, and it was not until 2021 that the Supreme Court resolved the short-lived circuit split in the Seventh Circuit's favor, *AMG*, 141 S. Ct. at 1352. Thus, at the time of Ross's bench trial and on direct appeal—both having taken place many years before the split even arose between the Seventh Circuit and

10

the overwhelming majority of its sister circuits—there was virtually no doubt that the approach eventually adopted by the Supreme Court in *AMG* was decidedly wrong.

Certainly, when perfect unanimity among the circuits supports a particular position, that position appears less arguable than it does unquestionable. Acknowledging that the Supreme Court did indeed alter the national approach to Section 13(b) in *AMG*—and we abide by that alteration absolutely—to have denied the FTC an equitable monetary remedy in 2012 would have seemed less a judgment call on an arguable issue, and more an abuse of discretion deviating from overwhelming national consensus. *See Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461, 466 (9th Cir. 2023) (rejecting appellant's argument of jurisdictional voidness post-*AMG* because the prevailing national approach at the time of adjudication recognized a monetary remedy under Section 13(b), thus a "colorable basis" for jurisdiction existed).

Thus, regardless of how we perceive Ross's argument today—as implicating subject matter jurisdiction, standing, merits issues, or a combination of these—an arguable basis clearly supported the judgment imposed, and it cannot be said that there was a "total want of jurisdiction" or a "clear usurpation of power" such that any defect renders the judgment

11

void under Rule 60(b)(4).[3, 4, 5]

B.

Ross alternatively seeks vacatur via Rule 60(b)'s catch-all provision, which permits relief when justified but not otherwise covered by an expressly enumerated portion of the rule. She contends that a change in controlling law justifies relief. She likewise argues that relief is warranted because she diligently raised the same arguments on direct appeal that *AMG* eventually vindicated. The FTC responds that a change in controlling law does

---

[3] We decline to temporally couch our application of the arguable-basis test in the present as Ross implies we must. *See, e.g.*, Opening Br. 27 ("Because there is no unresolved circuit split *today*, there is no arguable basis for the error exposed by . . . *AMG*.") (emphasis added). This Court declared in *Welsh* that Rule 60(b)(4) voidness only applies "when there is a total want of jurisdiction and no arguable basis on which it *could have rested*." 879 F.3d at 533–34 (emphasis added) (simplified). Tellingly, *Welsh* did not declare that the arguable-basis test entails considering whether a basis exists on which jurisdiction *can* rest. Rather, its use of the modal past tense confirms the appropriateness of past perspective, and to apply the test with the benefit of either contemporary knowledge or a past presumption of perfect foresight would make little sense.

[4] This Court recently vacated an equitable monetary judgment in light of *AMG*, framing a portion of its analysis as it related to certain defaulted defendants under Rule 60(b). *See Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 106–07 (4th Cir. 2022). But despite this Court's invocation of Rule 60(b) as applied to the defaulted defendants, that matter was still open on direct appeal. *See id.* It did not implicate the same finality concerns present here, and we decline to find it controlling.

[5] Ross relies heavily on *Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96 (4th Cir. 1979), for the proposition that we should not engage in an arguable-basis inquiry when considering Rule 60(b)(4) voidness. Setting aside our more recent decisions in *Wendt* and *Welsh*, *Compton* did not foreclose our application of the arguable-basis test. Rather, there, this Court concluded that vacatur of judgment was warranted "when unquestionably there was no basis whatsoever either in fact or in law for such a judgment." *Compton*, 608 F.2d at 107. In short, *Compton* vacated judgment based on an improper application of then-existing law—it did not consider the retroactive application of a novel interpretation ten years post-judgment.

12

not justify relief, nor does the fact that the Supreme Court eventually vindicated the position she took on direct appeal. The FTC concludes that her aggregated circumstances are not sufficiently extraordinary to warrant vacatur, and that the district court properly exercised its discretion in denying her motion.

Rule 60(b)(6) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment [for] . . . any [] reason that justifies relief." But relief under this catch-all provision is only available when a movant demonstrates "extraordinary circumstances." *Gonzalez*, 545 U.S. at 536. In evaluating whether circumstances are sufficiently extraordinary to justify relief, a district court must "delicately balance the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of all the facts." *Welsh*, 879 F.3d at 536 (simplified).

"It is hardly extraordinary" when the Supreme Court arrives "at a different interpretation" of a particular issue than lower courts after a case is no longer pending. *Gonzalez*, 545 U.S. at 536; *see also Agostini v. Felton*, 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6) . . . ."); *United States v. Salas*, 807 F. App'x 218, 229–30 (4th Cir. 2020) (applying *Gonzalez* and *Agostini* to affirm denial of vacatur under Rule 60(b)(6)). Further, "[i]t is not extraordinary for the Supreme Court to deny certiorari in a court of appeals case that it ultimately overrules in the review of a later similar case." *United States ex rel. Garibaldi v. Orleans Par. Sch. Bd.*, 397 F.3d 334, 339 (5th Cir. 2005).

13

Here, the Supreme Court's novel position in *AMG* is not sufficiently extraordinary to justify vacatur under the Rule 60(b) catch-all. A conclusion that such a circumstance justifies vacatur would effectively eviscerate finality interests and open the floodgates to newly meritorious 60(b)(6) motions each time the law changes. *See Moses v. Joyner*, 815 F.3d 163, 168–69 (4th Cir. 2016) ("[A] change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60(b)(6)." (simplified)).

Further, the fact that Ross raised the arguments on direct appeal that the Supreme Court eventually vindicated in *AMG* similarly fails to justify vacatur. This position is effectively a repackaging of Ross's argument that a change in decisional law is sufficiently extraordinary. She offers no precedent of this Court suggesting that past advocates may benefit from post-judgment changes in decisional law simply because those changes correspond with prior advocacy.[6] And, as above, such an approach would undermine bedrock finality interests. The approach could likewise generate strange post-judgment disparities between litigants based solely on litigation tactics—and without regard for the relationship between previously existing law and one's own culpability.

Ultimately, though, even if we concluded that Ross's advocacy on direct appeal warranted some favorable treatment for purposes of the Rule 60(b)(6) analysis, the district court did not abuse its broad discretion given the totality of the circumstances. To be sure,

---

[6] Diligence on direct appeal has been recognized as a relevant consideration to Rule 60(b)(6). *See, e.g., Gonzalez*, 545 U.S. at 537–38; *Hewitt*, 68 F.4th at 468–69; *Phelps v. Alameida*, 569 F.3d 1120, 1136–37 (9th Cir. 2009). But we have no reason to believe that diligence alone is sufficient to justify relief, nor that it outweighs other interests at play here.

14

in the wake of *AMG*, we now know that restitution was not congressionally authorized under Section 13(b). But, as the Ninth Circuit has noted, "the fact that our understanding of Congress's will has changed is not itself extraordinary." *Hewitt*, 68 F.4th at 469. Furthermore, regardless of whether Congress intended Section 13(b) to impliedly authorize an equitable monetary remedy, the FTC could have pursued "materially similar relief under alternative remedial pathways" without resorting to that section. *Hewitt*, 68 F.4th at 470; *see also AMG*, 141 S. Ct. at 1348–52 (discussing other mechanisms within the FTC Act— including Sections 5 and 19—expressly facilitating consumer redress). Thus, Congress clearly contemplated the availability of monetary redress under the Act, and the FTC's use of Section 13(b) to effectuate that redress is not inconsistent with high-level congressional intent.

Moreover, although the monetary judgment here imposes crippling financial liability on Ross, the severity of her unlawful conduct and her culpability therefor also factor into our analysis. *Hewitt*, 68 F.4th at 470. Ross victimized over a million innocent consumers, defrauding them to the tune of $163,167,539.95. Discussing her role in the scheme, this Court previously explained that "Ross was actively and directly participating in multiple stages of the deceptive advertising scheme—she played a role in design, directed others to 'add aggression' to certain advertisements, was in a position of authority, had the power to discipline entire departments, and purchased substantial advertising space." *Ross II*, 743 F.3d at 895. Such considerations disfavor relief.

Finally, Ross's failure to abide by the monetary judgment—and her flight from the United States—weighs against a finding of extraordinary circumstances. By all accounts,

15

it appears as though she never intended to abide by the monetary judgment affirmed by this Court nearly a decade ago. To now grant her relief would promote the conscious avoidance of judgments with which litigants disagree—an affront to justice that we cannot condone—in hopes of realizing some distant, future benefit. We will not reward Ross's defiance with a windfall.

Her aggregated circumstances are not extraordinary such that she is entitled to vacatur under the Rule 60(b) catch-all, and the district court soundly exercised its discretion in denying her such relief. This outcome is wholly consonant with our directive to "delicately balance the sanctity of final judgments . . . and the incessant command of the court's conscience that justice be done in light of all the facts." *Welsh*, 879 F.3d at 536 (simplified).

### III.

An arguable basis supported the imposition of an equitable monetary judgment, and the district court did not abuse its discretion in finding Ross's circumstances unextraordinary. Thus, the court properly denied Ross's motion for vacatur under Rule 60(b)(4) and (b)(6). Ross remains liable for $163,167,539.95 in restitution—an amount that would justly recompense the victims of her deplorable scheme.

*AFFIRMED*